Judge Joe Flatt, Judge Pryor, and I want to welcome you to the second day of our sitting. We're glad to be back here in Atlanta and able to conduct proceedings in person. You know the drill with regards to our clock. When the light turns yellow, that means that your time is starting to draw to a close, so please start wrapping up. If we take you beyond the light, then don't worry about it. You're on our time and not yours. I'll repeat what I said yesterday with regards to our CDC guidance and masks. If you're fully vaccinated, you don't need to wear a mask. If you are not fully vaccinated, you do need to wear a mask. Having said that, if you feel more comfortable wearing a mask regardless of vaccination status, that's perfectly fine too. OK. And with that, we will start with our first case, which is number 20-10672, United States v. Freddie Clark. Ms. Moore. And Ms. Moore, before I forget, because I might forget at the end, I know that your court appointed for Mr. Clark and on behalf of him and on behalf of the court, we want to thank you very, very much for your service and for taking the case. We really do appreciate it. Thank you, Your Honors. Good morning. And if I may, I'd like to take the opportunity just to wish Judge Toflak congratulations on reaching a 50 year milestone. It is an honor to appear before this court this morning. May it please the court, Mr. Sinha. I'm Lorraine Moore and I have the privilege of appearing this morning on behalf of the appellant, Freddie Clark. I have three issues I'd like to address this morning in Mr. Clark's appeal of his convictions, which serve as the basis for his 360 month prison sentence. The first being the district court's denial of Mr. Clark's motion for new trial. The second being the omission of Mr. Clark's eight prior felony convictions, a misdemeanor conviction and an arrest record. And third, the trial court's failure to instruct the jury to use the beyond a reasonable doubt standard in considering the special jury verdict question of weight. For the remaining issues raised related to the denial of Mr. Clark's motion to suppress and our cumulative error argument, I would rely on the arguments presented in my brief unless this court has questions. The first two issues, which are the district court's finding that Brady, the Brady violation did not warrant a new trial, and that the government was entitled to present evidence of as many of Clark's felonies convictions as it could prove, are related to count one of the indictment, possession of a firearm by a convicted felon, which was presented during the second phase of the bifurcated trial. When the government discovered after trial that its sole witness on the issue of the interstate nexus of a firearm not only failed to disclose his prior discipline for mishandling evidence, causing a failed prosecution, but that he was also dishonest in response to the government's attempt to elicit this information, the government should have conceded that Mr. Clark was due a new trial on that count. The district court in denying Mr. Clark's motion for new trial concluded that the evidence would not have made a difference in the outcome of this particular trial. In part, Ms. Moore, in part, the district court relied on what it believed was evidence on the gun itself with regards to marks of manufacture indicating that it was built somewhere outside of the state. So what do you say to that portion of the district court's order? Yes, Judge, the witness, Agent Colt, never specifically testified that the markings or any markings on firearms are indicative of the place where it was manufactured. And we think that's an important issue. If he had said all guns are inscribed with the place where they're manufactured, as opposed to maybe the home office of its manufacturer, then we believe that maybe that might have been a legitimate argument. But he never made that connection, and there's no evidence of that in the record. Do we look at what another expert's testimony might have been, or can we look at alternative ways of proving that the gun traveled in interstate commerce? So, for example, could the government just simply have introduced the marking based on cases like U.S. v. Clay and U.S. v. Brantley? Well, so, Your Honor, for the government to solely rely on the marking, there has to be some basis for that. There has to be someone to say that, again, markings represent the place where it's manufactured. And we simply don't have that. In this case, we don't even have – the agent never even testified that he had examined the serial number and that he, in turn, looked at the serial number, checked the ATF records, and made the connection between the serial number and maybe some other records maintained by ATF. And so that is the problem. Didn't Agent Culp testify that he relied on publicly available manuals or treatises? So one of the nuances, I believe, is a nuance, is that when questioning Agent Culp, the AUSA asked him in general. He said, tell us how you determine where a gun was manufactured. And Agent Culp said, in general, I do ABC. I check records. I examine the gun. I do research. Then when he talked about this specific gun, he never connected his method to this specific gun. The AUSA asked him a leading question and said, now, based on your research, your inspection, your experience, what is your conclusion? And, again, that's a nuanced distinction, but I think it's important because one of the things that he said was when he normally examines guns, he takes a photograph of them. Well, that photograph of this gun was not admitted into evidence. And so my point is that he didn't draw any connections with what he did with this specific gun. And so I believe that leaves him open to attack in terms of his methodology, which is an issue because of his credibility. He has been shown to be dishonest with the government. And so it is fair to ask why she would believe what he testified to at trial. I think the fair thing would have been for the government post-trial to, yes, to bring in another witness so that the government can say, we've already got another opinion, and this expert's opinion would be the exact same as Agent Culp's. The government in this case used expert witness testimony he called Agent Culp for the purpose of giving his opinion about this firearm. It didn't just admit the firearm into evidence and say, look at the inscription. It's enough. So I'd like to move on to the second issue. Still addressing Mr. Clark's possession of a firearm conviction, the government clearly exploited its ability to present evidence of Clark's status as a convicted felon by introducing a total of eight felony convictions, including his misdemeanor conviction, his lengthy arrest record, his juvenile history. The government literally threw everything plus the kitchen sink at Mr. Clark simply because it could. Now, while the number of convictions that the government may use to establish the mens rea element of the crime has not been addressed by this court, binding precedent from the Fifth Circuit recognized that the danger of a jury convicting a bad man is surely enhanced if multiple prior convictions are in evidence. And that was established in Barfield. And in the Barfield case, in a footnote, the court recognized that the government, while the government should be entitled to prove a limited number of convictions to protect its own interest. Here in Mr. Clark's case, the seven additional convictions that it used is not a limited number of convictions designed to protect the government's interest, but it was prosecutorial overkill. And here there were no curative instructions to serve as a check on the prejudicial effect of this type of evidence. Now, how many, if we use that standard, a limited number of convictions, what do you think that means? Well, so, Your Honor, in another case out of the circuit, I think it was, there was another case where there were, I think it was a Barfield case. There were four convictions. A jury overheard the prosecutor mention four convictions. And in that case, the court had a discussion about, again, it didn't specifically say that four was too many. I think it even discussed assuming that the government could and should use one conviction in a normal case. In that opinion, it held that the instruction, excuse me, the evidence was not prejudicial because there had been a limiting instruction given. And so, Your Honor, I just, I can't answer how many. I just, my argument is that eight is surely too many. And all of the mechanisms that are in place to guard against the prejudicial effect of that type of evidence. So, for example, Rule 401, which has to do with relevance. Misdemeanor conviction is not relevant, nor is a juvenile history and arrest record relevant. But the government ignored that. And then things like a limiting instruction, there was no limiting instruction given. Even redacting the face of the documents to eliminate. Now there weren't, let me talk about some of the procedural aspects of that issue with you if I could. Yes. So there was no objection to the contents of the records by the defense, right? That's correct. The defense did not. They only objected on the basis of 401. And was there a limiting instruction sought or requested? There was not. So we're reviewing that aspect of the claim for plain error. Yes, sir. Okay. So, Your Honor, this case, Mr. Clark's case, represents what the government will do when it is not provided with limits. And accordingly, this court should vacate that conviction, the possession of firearm conviction, on the basis of those two things. Finally, Your Honor, I'd like to use my limited time to argue our final issue, which is the trial court's failure to instruct the jury to apply the beyond a reasonable doubt standard to the special verdict question of weight. And that should be viewed by this court as a structural error and not harmless error without regard to analyzing whether the evidence of guilt was overwhelming. It's our position. That was in the first trial, right? I'm sorry, Your Honor. That jury instruction issue pertains only to the first part of the bifurcated trial. Yes, sir. Not the second part. Not the second part. The possession with intent to distribute methamphetamine. We believe that this case is more like the facts in Sullivan v. Louisiana. This is not a case where the judge found the aggravating facts. In this case, the jury was given the decision on the aggravated facts, that being the question of weight. However, they were not told by what standard that they should determine weight by proof beyond a reasonable doubt. And that, we're arguing, is structural error, and the court should find that without regard to whether or not the evidence was overwhelming. Thank you. All right, Ms. Moore, thank you very much. You've saved your time for rebuttal. Mr. Sinner. Good morning, Your Honors. May it please the Court, Javier Sinner on behalf of the United States. I'd like to begin with the Brady issue in this case. We're arguing here that the discipline in 2016 about the failure to properly log evidence was not material in this case. There's little reason to believe that a jury would have disbelieved Agent Culp's testimony about the interstate nexus of a firearm based on a 3-year-old discipline for failure to properly log testimony in this case – or excuse me, properly log evidence. It would have also learned that he lied to you about that discipline. He would have been worthless as a witness. Now the jury may have, as the district court found, come to the same conclusion for other reasons based on other evidence in the case. But, I mean, you have an agent lying to the party that is putting him on as a witness. That's pretty damning stuff. I don't know if there's evidence in the record that he lied. There's a misstatement. He wasn't truthful. I don't want to use words that get us confused. He was not up front with you. He was not truthful with you about that discipline when the trial prosecutor went through that sort of giglio checklist to make sure there weren't any hidden landmines. Right? That's correct, Your Honor. I don't think a jury would then look at that and disregard his entire testimony about a completely separate aspect of the case, which is the interstate nexus for the firearm. My understanding is he testified about what he looked at when he determined a firearm's interstate nexus. He looked at the markings on the gun, the manufacturer, as well as ATF records, which he did say he looked at in this case, and public treatises. And his testimony was corroborated by the gun itself, which had imprinted on it Prescott, Arizona, USA. And so even if a jury had heard about these disciplines and about this misstatement, it wouldn't give it a reason to discount all his evidence, especially with the corroboration of the gun itself. Now, the district court, the way I read its explanation, tried to hypothesize that the government would have just simply put on another witness had there been a new trial. But I'm not sure that you're supposed to be looking at what would happen in a second trial for materiality purposes. Right? You're supposed to be looking at what the effect would have been on this trial, the one that took place. That's correct, Your Honor. The standard here is reasonable probability that had it been disclosed, this trial would have proceeded differently. This court has said in several cases, which we cite on page 14 of our brief, that that is one factor this court can look at when determining materiality. And those are the Matthews and Garcia case in our brief. But I don't think here – I think it's particularly responsive here to Mr. Clark's claim that he would have foregone the bifurcated trial had this evidence been disclosed. The bifurcated trial, of course, is for his benefit. And so I think it's responsive to that. But here I think it's quite clear that the discipline here would not have impacted the jury enough to disregard entirely Mr. Agent Culp's testimony, especially with the corroboration of the firearm itself. Were the markings on the gun in evidence at this trial? The gun was shown to the jury, and the markings on the gun were on the gun itself. Agent Culp testified that he looked at the gun and the markings on it when making his determination. But no one read the markings to the jury itself. If there are no further questions about the Brady claim, I'm happy to move on to the convictions in this case. The introduction of the convictions here – I want to clarify first that although the government introduced evidence of eight convictions, they only elicited testimony about four of them. And in this case – But all those convictions in terms of evidentiary records went back to the jury, right? That's true. Yes, Your Honor. The question is whether the risk or prejudice substantially outweighed the probative value. Here, I think probativeness is especially important because this was after Ray Haif. And after that case, the government's burden is to prove affirmatively, not simply that Mr. Clark was a felon, but that he knew he was a felon. And so, when proving knowledge through indirect evidence, every conviction makes it more likely that Mr. Clark actually knew he was a felon. On top of that, the prejudice here was minimal, to say the least, because as the Court has mentioned, this was a bifurcated trial, and this evidence was introduced in the second phase of the trial. And the only question there, because the jury had already found in the first phase that Clark had possessed a gun, so the only three issues in phase two of the trial were whether there was an interstate nexus for the firearm, whether Mr. Clark was a felon, and whether Mr. Clark knew he was a felon. And so, any danger of sort of spillover prejudice here was minimal, to say the least, because it only could have affected, at most, the interstate nexus. And there's no reason to believe that would have happened in this case. What about the contentions with regards to the order of probation and the rap sheet? Your Honor, that was simply an oversight. This was reviewed for plain error, and that was simply an oversight. And the government, had it been brought to its attention either by a district court or by an objection from the defendant, would have been happy to remove or redact the arrest record in this case. I know, but that's not – the government shouldn't have to be waiting for someone to call an error to its attention. That's just not the way things are done, not when you're talking about an order of probation and a rap sheet. Those are just things that are not usually admitted into evidence unless it's a specific type of case where they're incredibly material. I agree, Your Honor. I understand the court's concern, and we agree that this is plain error here, and we don't argue the first two prongs of that standard. Here, as you said, it didn't affect his substantial rights because the evidence of his convictions was overwhelming. The evidence that he knew he was a convicted felon was overwhelming, and the prejudice was minimal because this was a bifurcated trial. And there was only a few issues and contention in the last phase of the trial. But no, but his claim is not that – and I'm not saying that Mr. Clark is going to prevail or not. That's for us to figure out later. But his claim is not that the admission of so many convictions prejudiced the first part of the bifurcated trial. It only goes to the second. I don't understand Ms. Moore to be arguing that that issue spills over into the first part. It's just segmented, so he's only challenging the felon in conviction verdict with regards to the number of priors that were admitted. Do you understand it differently? No, Your Honor. That's correct. But I think it's important to realize that there's only three very narrow issues in the second phase of the trial. And so the prejudice is minimal because the questions of Mr. Clark's felon status and his knowledge of that status were both proved by the convictions entered in this case. And so although there is risk of prejudice here, it seems minimal in light of the questions that are being answered by the jury in this second phase of the trial, on top of the fact that the evidence was overwhelming that he was in fact a felon and knew he was a felon. I hope that answered the court's question. No, it does. Okay. But in what sense does – do the number of convictions start straying over into propensity evidence, that somebody is such a bad character based on prior run-ins with the law that he or she must have done what they were accused of in this case? I'm not sure that this 403 context-specific balancing test is a minimal to a sort of hardline categorical number. And so the district court will look at the probative value and look at the prejudice and will make a determination based on that. And the question for this court, of course, is whether that was undue discretion. But I don't know if you can give a categorical rule based on a 403 balancing test that is necessarily based on the facts of the case and the context of that case. And so here, if you look at the probative value, it was quite probative in showing his knowledge indirectly through indirect evidence. And the prejudice here was minimal, and the district court found that the prejudice did not substantially outweigh the probative value here. So I understand the court's concern about sort of setting a categorical limit, but I don't think this is amenable to that sort of determination. If there are no more questions on this, I'm happy to move on to the jury instruction point. As the court noted, this is reviewed for plain error. There was no error here, let alone plain error, because the district court multiple times informed the jury during the jury instructions and also throughout the trial that it had to find the defendant guilty beyond a reasonable doubt. Shortly after informing the court about the count two in this case, about the beyond reasonable doubt standard, it then informed the jury that if they found the defendant guilty on count two, they had to unanimously find a drug quality over or less than five grams of pure methamphetamine. And then on the verdict form here, along with all the counts which the district court had determined, or excuse me, instructed the jury had to be found beyond a reasonable doubt, it also included the drug quality on that same verdict form. And I think it's important to note here the district court only instructed the jury on one standard, which was the beyond a reasonable doubt standard, and so it's not as if the jury had multiple standards from which to choose from in making the determination. It only ever heard the one standard, which is the beyond a reasonable doubt standard. The argument, as I understand it, is that the court should have added the beyond a reasonable doubt language again when it discussed the issue of weight. That's correct, Your Honor. I think that would have been ideal in this case. But when this court looks at a challenge instruction and looks at the instructions as a whole, and here the instructions as a whole looked at in context, clearly indicates to the jury that the standard to use would be beyond a reasonable doubt for the drug quantity. That being said, even if there were error here and that error was plain, this didn't affect his substantial rights in this case because the evidence of the drug quality was overwhelming. A government witness testified that of the 85 grams of methamphetamine Clark had on his possession, at least 44 grams was pure methamphetamine. And that testimony was essentially uncontested at trial. Your Honors, if there are no further questions, we'd rest on our wreaths. Thank you. Thank you very much, Mr. Sena. Thank you. If I could, taking first the government's argument that the failure to log evidence was not material to the outcome in this case, one of the things that the government argued in its brief was that the government, had it known about this evidence before trial, it simply would have called another witness. And we think that's very indicative of how the witness would be subject to attack at trial, that the government would not have called him. Had he been called, had his attorney known about that, he absolutely could have impeached him on that and certainly caused or created a reason to doubt by the jury. But then again, more importantly, is once the government learned that he had not been truthful, that's even more of a reason, not been truthful in a Giglio meeting about his own self, that's even more of a reason to not trust his testimony. The government, it's a presumptuous argument to say that they simply would have called another witness. Unimpeachable is the assumption that they're saying. We simply would have called another witness, that that opinion would have been the same. How do they know that unless they've consulted someone else about their expert opinion? And that the jury would have believed that witness and returned a conviction. It's another way of saying, well, I have a trial. Counsel, that's a persuasive argument. Your argument is they have to speculate as to what would happen. Yes. That's the end of that argument, basically, that it's all based on speculation. Correct. We agree, Your Honor. We agree. Second, with respect to the other argument with respect to the Brady information, is that trial counsel at the motion for new trial hearing testified that he would have considered a different strategy. He would have considered whether or not to challenge the agent's opinion as to interstate nexus. He would have considered whether or not to bifurcate the trial. And so that is enough to show a change in the outcome. Finally, with respect to the jury instructions, the court only gave a beyond a reasonable doubt standard charge twice at the very beginning of trial, which was the day before, and then the second day at the time he gave the jury instruction. That is distinguishable from the Burke case that this court considered where the charge, the court gave the inappropriate charge first and then corrected it, excuse me, the right charge first and then corrected it with the wrong charge. Thank you. All right. Thank you both very much. All right. OK, our second case is.